STATE OF NORTH CAROLINA v. REGINALD BAKER

No. 764A85

(Filed 7 July 1987)

1. Criminal Law § 73— rape and incest—statements by victim's grandmother—hearsay and double hearsay

The trial judge did not err in a prosecution for first degree rape and incest by excluding testimony from the victim's mother that the victim's grandmother had said she suspected that the victim's grandfather had had sexual relations with her and testimony from another witness that the victim's mother had said that the grandmother had said that she suspected the grandfather of having sexual relations with the victim. N.C.G.S. § 8C-1, Rule 802.

2. Criminal Law § 33— rape and incest—testimony of grandmother—speculative

The trial court did not err in a prosecution for rape and incest by the victim's stepfather by refusing to admit testimony that the victim's grandmother suspected the grandfather of having had sexual relations with the victim because the grandmother did not testify at the *in camera* hearing which determined the admissibility of the evidence and her evidence if she had testified was too speculative to have been admissible.

**3. Criminal Law § 51— child medical examiner—qualified as expert pediatrician**

An assignment of error that the trial court erred in a rape and incest prosecution by qualifying a witness as a child medical examiner was overruled where the witness was tendered by the State and accepted by the court as an expert in the field of pediatrics. The witness referred to his experience as a child medical examiner as evidence of his qualification as an expert in pediatrics.

**4. Criminal Law § 53— rape and incest—opinion of pediatrician—admissible**

The trial court did not err in a prosecution for rape and incest by permitting a pediatrician to testify that his physical examination of the victim was consistent with the events described by the victim.

**5. Witnesses § 1.2— rape and incest—voir dire to determine understanding of duty to tell truth—in presence of jury—no error**

The trial court did not err in a prosecution for rape and incest by conducting a competency *voir dire* of the nine-year-old victim in front of the jury where the court examined the witness as to her understanding of the duty of a witness to tell the truth. N.C.G.S. § 8C-1, Rule 104(c) provides that such a hearing may be in front of a jury, and defendant has not demonstrated how he was prejudiced by the examination.

APPEAL by defendant from *Lewis (John B.), Judge.* Judgments entered 19 September 1985 in Superior Court, WAYNE County. Heard in the Supreme Court 12 February 1987.

The defendant was tried for first degree rape and incest committed against his nine-year-old stepdaughter. The State's evidence showed that on 20 or 21 June 1984 the victim's mother entered an alcoholic rehabilitation center, leaving the victim and her siblings in the defendant's care. On the night of her mother's departure the victim was asleep in the upper bunk bed in a room shared by her sister. The defendant entered the room, climbed into the victim's bed, removed her clothes and had sexual intercourse with her. She testified that this had not happened before but that it occurred again the following night and on several subsequent occasions. She reported the incidents to her grandmother, to a social worker, to a physician, and eventually, to her mother. The victim was examined by a physician, Dr. Reuben Maness, who testified that his observations revealed physical evidence consistent with the victim's having experienced vaginal penetration.

The defendant testified in his own behalf and denied committing these offenses. He also presented evidence of his good

character. He was convicted as charged and sentenced to concurrent terms of life and four years in prison. He appealed.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Geoffrey C. Mangum, Assistant Appellate Defender, for the defendant appellant.*

WEBB, Justice.

[1] In his first assignment of error the defendant argues that the court erred in excluding evidence that the prosecuting witness' grandfather had engaged in sexual relations with her. During the cross-examination of Rebecca Rouse, a social worker who worked on the prosecuting witness' case, the defendant's attorney discovered that Ms. Rouse's notes showed that Jo Ann Baker, the prosecuting witness' mother, suspected that the prosecuting witness had had sexual relations with her grandfather.

The State objected to any testimony in regard to any sexual behavior of the prosecuting witness other than sexual behavior at issue in this case on the ground that such testimony is excluded under the Rape Victim Shield Act, N.C.G.S. § 8C-1, Rule 412. Pursuant to subsection (d) of the Act the court conducted an in camera hearing to determine the admissibility of the testimony. The grandmother was subpoenaed but did not come to the hearing.

Ms. Baker testified at the in camera hearing that she had said to Mary Edwards:

I told her that my mother seemed to think that my father had messed with [the prosecuting witness]. Said that she had come home one day, she had left the kids there with my father and when she came back said she was sitting in a short chair or something and he stayed in the bathroom and he wouldn't come out in a long time, but she suspected something and I told her I didn't believe it. . . . [M]y mother said, she had bloody pants on during that night, sometime when she found [the prosecuting witness] changing getting ready to take a bath, but as far as them being together in

bed, no, my mother didn't tell me nothing like that and nobody else.

Mary Edwards testified at the in camera hearing that Mrs. Baker had told her:

[T]hat her mother had just called her and her mother was upset with her, she had gone some place and came back and when she came back she couldn't get in the door and finally she said that the father did come and let her in and her mother was under the impression that he had been with [the prosecuting witness].

The court excluded testimony as to the conclusion of Mrs. Baker's mother that the prosecuting witness may have had sexual relations with her grandfather. The court said such evidence was inadmissible under the Rape Victim Shield Act, N.C.G.S. § 8C-1, Rule 412. The defendant argues this was reversible error. He cites *State v. Ollis*, 318 N.C. 370, 348 S.E. 2d 777 (1986), and *State v. Baron*, 58 N.C. App. 150, 292 S.E. 2d 741 (1982), and argues that this testimony is relevant under the Act. He contends that this evidence would account for the findings of Dr. Maness as to the prosecuting witness' condition which proves that someone other than the defendant had sexual relations with her. He said this tends to prove the defendant did not have sexual relations with the prosecuting witness.

It is not necessary to determine whether the Rape Victim Shield Act applies to this case. The testimony of Mrs. Baker as to what her mother told her was hearsay. *See* N.C.G.S. § 8C-1, Rule 801(c) for the definition of hearsay. The testimony of Ms. Edwards as to what Mrs. Baker told her Mrs. Baker's mother had said was double hearsay. The testimony of neither witness would have been admissible for consideration by the jury. N.C.G.S. § 8C-1, Rule 802. It was not error for the court to exclude this testimony.

[2] At trial the defendant contended that the testimony of each of the witnesses at the in camera hearing established that the grandmother could offer relevant testimony. Prior to the adoption of the new rules of evidence it was clear that the court could not find based on this evidence that the grandmother could testify. It has been the law in this state that at an in camera hearing to determine the admissibility of evidence a court cannot consider

hearsay testimony. *State v. Davis*, 290 N.C. 511, 227 S.E. 2d 97 (1976). N.C.G.S. § 8C-1, Rule 104(a) now provides in part:

> Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court, . . . In making its determination it is not bound by the rules of evidence except those with respect to privileges.

We do not have to decide whether Rule 104(a) provides that in determining a question as to the admissibility of evidence a court may rely on hearsay evidence. We hold that the testimony of Mrs. Baker and Ms. Edwards as to what the prosecuting witness' grandmother would have said is too equivocal to say the court committed error in excluding it.

The testimony of each witness was to the effect that the grandmother was suspicious that the grandfather had sexual relations with the prosecuting witness. Mrs. Baker said the grandmother's suspicion was aroused because the grandfather stayed in "the bathroom a long time." Ms. Edwards said the grandmother was suspicious because the grandfather did not come immediately to let her in when she was locked out of the house. If the grandmother had testified to these facts her conclusion that the grandfather had engaged in sexual relations with the granddaughter would have been too speculative to be admissible. *See State v. Porth*, 269 N.C. 329, 153 S.E. 2d 10 (1967). She should not have been allowed to testify that the grandfather stayed in "the bathroom a long time" or that he was late in letting her in the house when the granddaughter was in the house. This testimony would not have been relevant. It did not tend to make any fact that is of consequence to the determination of the case more or less probable. *State v. Coen*, 78 N.C. App. 778, 338 S.E. 2d 784 (1986). *See* N.C.G.S. § 8C-1, Rule 401, for the definition of relevance.

We do not know what the testimony of the grandmother would have been. She did not testify at the in camera hearing. The court did not err by excluding her testimony from the jury based on the evidence presented at the hearing. The defendant's first assignment of error is overruled.

[3] The defendant next argues that the court erred in allowing the State to qualify Dr. Maness as an expert "child medical examiner" specializing in cases of child sexual abuse because the

area is not proper for expert testimony, the witness failed to demonstrate his qualifications in the field, and the questions and answers "artificially bolstered his testimony." It is apparent from an examination of the record that the witness was tendered by the State and accepted by the court as an expert in the field of pediatrics and that the witness referred to his experience as a child medical examiner as evidence of his qualification as an expert in pediatrics. This assignment of error is overruled.

[4] By his third assignment the defendant argues that the court erred in overruling the defendant's objection to the State's asking Dr. Maness whether his observations during examination of the victim were consistent with what she had told him about the incident in question. He contends that such questioning improperly invaded the province of the jury and artificially bolstered the victim's testimony.

After testifying that the victim had told him that her stepfather had engaged in sexual intercourse with her, the following occurred on direct examination of Dr. Maness:

Q: Based on your physical examination and your findings relating to the absence of a hymen in [the victim] was that consistent, your physical consistent with what [the victim] told you had happened[?]

A: Yes.

. . .

A: What the physical examination was consistent with what she had told me, yes.

Q: And based on your experience and training in these kinds of cases, your conversation with [the victim] and your examination of physical findings, do you have an opinion as to whether or not [the victim] had been penetrated vaginally?

Mr. Braswell: Objection. [Exception No. 7]

Court: Overruled. You may answer.

A: My opinion was that she had been.

This testimony was properly admitted under *State v. Galloway,* 304 N.C. 485, 284 S.E. 2d 509 (1981), in which this Court held that

> A physician who is properly qualified as an expert may offer an opinion as to whether the victim in a rape prosecution had been penetrated and whether internal injuries had been caused thereby. . . . Testimony that an examination revealed evidence of traumatic and forcible penetration *consistent with* an alleged rape is a proper expression for an expert witness to establish whether the victim had been penetrated by force.

*Id.* at 489, 284 S.E. 2d at 512 (citations omitted, emphasis in original). The witness in this case, like the witness in *Galloway,* did no more than express an opinion that his examination revealed evidence consistent with events described by the victim. *See also State v. Robinson,* 310 N.C. 530, 313 S.E. 2d 571 (1984) and *State v. Starnes,* 308 N.C. 720, 304 S.E. 2d 226 (1983). This assignment of error is overruled.

[5]  Finally, the defendant argues that the court erred in conducting a competency voir dire of the victim in the presence of the jury. The record reveals that the following occurred during direct examination of the victim:

> MR. BRASWELL: Your Honor, we object and ask the Court [to] inquire as to whether or not this young lady understand [sic] the nature of an oath.
>
> COURT: Do you understand that you have your hand on the Bible promising to tell the truth, that's what she asked. Do you swear that you'll tell the truth and nothing but the truth?
>
> A: Yes, sir.
>
> Q: Would you tell us your name?
>
> . . .
>
> Q: And when you have gone to school before have any of your teachers told you about telling the truth?
>
> A: Yes, ma'am.

Q: And do you know what that means?

A: Yes, ma'am.

Q: Can you tell us what that means?

A: Yes, ma'am.

Q: What does that mean? Do you understand what I'm asking you, [name]?

MR. BRASWELL: Objection.

COURT: You can answer. You do understand what she's saying?

A: Yes, sir.

Q: What does it mean to tell the truth?

A: It means to tell what happened.

Q: Okay.

MR. BRASWELL: Objection, move to strike.

COURT: Overruled. Denied.

Q: And if you don't tell the truth, what is that?

A: A lie.

Q: Okay. Is it good to tell the truth or to tell a lie?

MR. BRASWELL: Objection.

COURT: Overruled. [Exception No. 2]

Q: You can go ahead?

A: The truth.

Q: And when you told the Judge before you started talking this morning you said you were going to tell the truth; is that right?

A: Yes, ma'am.

Q: And is that what you're doing?

A: Yes, ma'am.

MR. BRASWELL: Objection.

COURT: Overruled.

Although the defendant did not request a voir dire hearing out of the presence of the jury to determine the competency of the witness he argues the court should have had such a hearing. He argues that the way in which the examination was conducted unfairly bolstered the witness' credibility with the jury because she was able to say several times that she was telling the truth. He also contends he was not able to cross-examine the witness as to her competency because the court asked its questions before the jury.

N.C.G.S. § 8C-1, Rule 104, provides in part:

(a) . . . Preliminary questions concerning the qualification of a person to be a witness, . . . shall be determined by the court, . . .

. . .

(c) . . . Hearings on the admissibility of confessions or other motions to suppress evidence in criminal trials in Superior Court shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be so conducted when the interests of justice require or, when an accused is a witness, if he so requests.

Rule 104(c) requires that a hearing such as the one requested in this case be held out of the presence of the jury only when the ends of justice require it. We cannot hold it was error in this case for the court not to hold the hearing out of the presence of the jury, particularly when the defendant did not request it.

The defendant raised a question as to the understanding of the nature of an oath by the witness. Lack of understanding of the nature of an oath would have been grounds for disqualification of a person as a witness prior to the adoption of the Rules of Evidence. *See State v. Pope*, 24 N.C. App. 217, 210 S.E. 2d 267 (1974), *cert. denied*, 286 N.C. 419, 211 S.E. 2d 799 (1975). N.C.G.S. § 8C-1, Rule 601, does not mention the ability to understand the nature of an oath but provides a person may be disqualified as a witness when he is incapable of expressing himself concerning the matter or when he is incapable of understanding the duty of a

witness to tell the truth. The court in this case examined the witness as to her understanding the duty of a witness to tell the truth. Rule 104(c) provides that such an examination may be in front of a jury. The defendant has not demonstrated how he was prejudiced by this examination in any way which would not be the case in any such examination. He has not demonstrated error.

In the defendant's trial we find

No error.