STATE OF NORTH CAROLINA
v.
ANTONIO HOLT
No. COA07-435
Court of Appeals of North Carolina.
Filed January 15, 2008
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Sonya M. Calloway-Durham, for the State.
Adrian M. Lapas for defendant-appellant.
HUNTER, Judge.
Antonio Holt ("defendant") appeals from the entry of judgments on jury verdicts of guilty on two counts of first degree rape, two counts of first degree sex offense, and four counts of taking indecent liberties with a child. After careful review, we find no error.
On 14 April 2004, the juvenile Q.M. approached a camp counselor and stated that she had been touched in her private area by defendant, whom she called Uncle Tony. The counselor contacted Q.M.'s mother and Child Protective Services; Q.M. then made a statement to police and was examined at Charlotte Medical Center. Defendant was arrested and charged with two counts of first degree rape, two counts of first degree sex offense, and four counts of taking indecent liberties with a child. He was convicted by a jury on all counts on 29 June 2006. Defendant now appeals.
Defendant first argues that the trial court erred by failing to grant his motion for mistrial where one juror commented to another on the testimony of one witness. This argument is without merit.
In this case, one juror passed a note to the bailiff reporting that another juror had made disparaging comments about some aspect of the case with a third juror before the jury began its deliberations. The comments concerned a witness for the State who during the trial testified that defendant had, years earlier, abused her in the same way as Q.M.; the juror allegedly commented "[s]he can't count[,]" apparently referring to the witness's varying estimates of her own age when the abuse occurred.
Upon receiving this information, the court recalled each of the twelve jurors and two alternate jurors individually and questioned them as to whether they had heard or made any comments about the case to another juror. From this questioning, the court determined that one juror had made the comments to another juror during a smoke break and was overheard by two other jurors. The court asked each of the four jurors whether this made him unable to keep an open mind and follow his oath as a juror. Each answered in the negative.
We review a trial court's ruling on a motion for mistrial based on alleged juror misconduct for abuse of discretion. State v. Wood, 168 N.C. App. 581, 583, 608 S.E.2d 368, 370 (2005). "Where juror misconduct is alleged . . . the trial court must investigate the matter and make appropriate inquiry. "State v. Najewicz, 112 N.C. App. 280, 291, 436 S.E.2d 132, 139 (1993) (emphasis omitted). Clearly, the trial court did so in this case, recalling and speaking to each juror individually, allowing each side's attorney to question the jurors, and recalling two jurors to ask further questions.
"A mistrial is appropriate only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law." State v. Blackstock, 314 N.C. 232, 243-44, 333 S.E.2d 245, 252 (1985); see N.C. Gen. Stat. § 15A-1061 (2005). Such is not the case here. An offhand comment was made about the intelligence of one witness  not even the accusing witness  and each juror stated it would not affect his decision. As such, this argument is without merit.
Defendant next argues that the trial court erred by not conducting a second competency hearing to assess Q.M.'s ability to understand and tell the truth after she tried to retract an earlier statement during her testimony. We disagree.
Per Rule of Evidence 601(b):
A person is disqualified to testify as a witness when the court determines that he is (1) incapable of expressing himself concerning the matter as to be understood, either directly or through interpretation by one who can understand him, or (2) incapable of understanding the duty of a witness to tell the truth.
N.C. Gen. Stat. § 8C-1, Rule 601(b) (2005). The rule "does not mention the ability to understand the nature of an oath but provides a person may be disqualified as a witness when he is incapable of expressing himself concerning the matter or when he is incapable of understanding the duty of a witness to tell the truth." State v. Baker, 320 N.C. 104, 112-13, 357 S.E.2d 340, 345 (1987). Further:
"There is no age below which one is incompetent, as a matter of law, to testify." The issue of the competency of a witness to testify rests in the sound discretion of the trial court based upon its observation of the witness. Absent a showing that a trial court's ruling as to competency could not have been the result of a reasoned decision, it will not be disturbed on appeal.
State v. Rael, 321 N.C. 528, 532, 364 S.E.2d 125, 128 (1988) (citations omitted).
The court conducted a competency hearing before the trial began to determine whether Q.M. was competent to testify. Q.M. testified that she knew the difference between right and wrong as well as between the truth and a lie, and was able to demonstrate that knowledge upon questioning by the attorneys. At the end of the questioning, the court made the following statement:
Based upon the answers given by the juvenile witness, the Court is satisfied that she understands the difference between truth and untruth, and the importance of telling the truth; that she comprehends the difference between truth and untruth; and, she exhibits the capacity to understand and relate facts that will assist the jury. Therefore, the Court finds that she is competent to testify.
During cross-examination, defendant's attorney asked her about certain statements she made to a social worker to the effect that her father had sexually abused her in a manner similar to the way she described defendant so doing. On the stand, she asserted that"[her father] would never do nothing like that." She admitted making the statements to the social worker, but stated that she had had a dream about her father abusing her, and when she told the social worker, "they got it all mixed up."
Defendant did not object to the court's ruling that Q.M. was competent, and as such, we review this assignment for plain error.
"[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a `fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or `where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has `"resulted in a miscarriage of justice or in the denial to appellant of a fair trial"' or where the error is such as to `seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said `the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.'"
State v. Lemons, 352 N.C. 87, 96-97, 530 S.E.2d 542, 548 (2000) (alterations in original; citations omitted), cert. denied, 531 U.S. 1091, 148 L. Ed. 2d 698 (2001).
Q.M.'s confusion about her own prior statements regarding her father does not rise to the level of plain error. Any contradictory statements would go to her credibility as a witness, not her ability to understand and convey the truth. Considering the trial court's lengthy examination of Q.M., we cannot say that its failure to conduct a second examination amounted to plain error. This assignment of error is overruled. Because the trial court did not err in not declaring a mistrial due to juror misconduct or in failing to conduct a second competency hearing, we find no error.
No error.
Judges McGEE and BRYANT concur.
Report per Rule 30(e).